754 So.2d 529 (1999)
Richard HOLMES, Jr. and Michael Earl Perkins, Appellants,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01122-COA.
Court of Appeals of Mississippi.
November 16, 1999.
Rehearing Denied February 1, 2000.
Certiorari Denied March 23, 2000.
*531 Rabun Jones, Greenville, Attorney for Appellants.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
BEFORE KING, P.J., IRVING, AND LEE, JJ.
KING, P.J., for the Court:
¶ 1. In a joint indictment, Appellants Richard Holmes, Jr., and Michael Earl *532 Perkins were each charged with one count of aggravated assault on Marvin Sims and one count of shooting a firearm into a dwelling house. A Humphreys County Circuit Court jury found both defendants guilty as charged. The judge sentenced each defendant to ten years for the aggravated assault and five years for shooting into a dwelling, said sentences to be served concurrently in the custody of the Mississippi Department of Corrections.
¶ 2. On appeal, Holmes and Perkins present the following assertions of error
I. DEFENDANTS WERE DENIED THEIR CONSTITUTIONAL RIGHTS TO DUE PROCESS AND TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE 5TH, 6TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AS WELL AS ARTICLE 3, SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION OF 1890, WHEN THE COURT PERMITTED, AND TRIAL COUNSEL UNDERTOOK, DUAL REPRESENTATION OF BOTH DEFENDANTS.
II. DEFENDANTS WERE FURTHER DENIED THEIR CONSTITUTIONAL RIGHTS TO DUE PROCESS AND TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE 5TH, 6TH, AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AS WELL AS ARTICLE 3, SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION OF 1890, DUE TO TRIAL COUNSEL'S FAILURE: TO PROPERLY PREPARE FOR THEIR DEFENSE; TO OBJECT TO THE ADMISSION OF INADMISSIBLE EVIDENCE AND IMPROPER STATEMENTS BY THE PROSECUTOR; TO ATTEMPT TO SUPPRESS THE STATEMENT OF MR. PERKINS; AND TO PRESERVE AND PRESENT DEFENDANTS' CLAIM OF SELF-DEFENSE.
III. DEFENDANTS WERE DENIED THEIR RIGHTS UNDER ARTICLE 3, SECTION 26 OF THE MISSISSIPPI CONSTITUTION OF 1890, TO BE APPRISED OF THE CHARGES AGAINST THEM AND, THUS, REVERSIBLE ERROR OCCURRED WHEN DEFENDANTS WERE TRIED AND CONVICTED OF AGGRAVATED ASSAULT UNDER AN INDICTMENT WHICH COMPLETELY OMITTED ANY ALLEGATION OF VENUE FOR THAT OFFENSE.
IV. REVERSIBLE ERROR OCCURRED WHEN THE TRIAL COURT FAILED TO TENDER ADEQUATE SELF-DEFENSE INSTRUCTIONS TO THE JURY.
V. REVERSIBLE ERROR OCCURRED WHEN THE TRIAL COURT PERMITTED OFFICER THURMOND TO TESTIFY, OVER TIMELY OBJECTION, THAT THE SLUG WHICH WAS REMOVED FROM MR. SIMS WAS A .38 CALIBER AND PERMITTED, ON SEVERAL OCCASIONS, PROOF OF DAMAGE TO THE BLUE CHEVROLET.
We affirm the verdict and the judgment of the trial court.

FACTS
¶ 3. On Monday, July 14, 1997, at about 10:00 P.M., Myron Stanley and Marvin Sims parked Sims's blue Chevrolet automobile in Fisk Alley, next to Sims's mother's home. A white Suburban stopped in the alley behind them. Several gunshots were fired from this vehicle. Sims and Stanley recognized Richard Holmes and Michael Perkins, who exited from the passenger *533 side of the Suburban.[1] This shooting incident arose from a confrontation between Sims and Holmes two days earlier. According to Sims, he had not seen Holmes or Perkins on that day until the Suburban pulled up behind his car. However, Holmes and Perkins testified that Sims and Stanley had fired shots at them as they exited the Lin Yin Grocery earlier in the evening. Holmes and Perkins denied following Sims and Stanley to the alley. They claimed to have been going to Perkins's mother's home which was adjacent to Sims's mother's home.[2]
¶ 4. Testimony conflicted regarding who fired the first shot. Myron Stanley, who claimed to have been unarmed, stated that he saw something shiny in Holmes's hand, began running, and could not tell who fired first. Sims testified that Holmes and Perkins exited the Suburban and fired immediately. Sims then drew his .22 caliber automatic and returned fire as he ran away. Perkins and Holmes both claimed that Sims shot first, wounding Perkins in the left arm. They then returned fire.
¶ 5. Perkins had a .22 caliber rifle, while Holmes carried a .38 caliber handgun. As Sims ran through Fisk Alley, he continued to shoot behind him. Perkins followed Sims into the alley. Sims, shot in the hip, fell, heard someone following him, rose to his feet and continued past his mother's house toward the home of his sister, Bobbie Banks. Sims testified that as he entered his sister's house Holmes shot at him.
¶ 6. The police photographed numerous bullet holes in Banks's back door, storm door, windows, walls, air conditioner, and the headboard of her bed. In addition to the damage to Banks's house, photographic evidence showed that the windshield of Sims's blue Chevrolet had been knocked out. Officers recovered Sims's gun from the alley where it was dropped when he fell. Holmes and Perkins testified that they threw their guns into a river before seeking medical attention for Perkins's wound at the Indianola Hospital.
¶ 7. Officer Lampkin of the Belzoni Police Department recorded in writing Holmes's statement of the incident. Officer Mickey Foxworth took two statements from Perkins, on July 15, 1997, one at 2:10 A.M. and one at 4:00 P.M. All three of the statements by Holmes and Perkins were admitted into evidence. In his signed statement Holmes alleged that Sims shot at him at Lin Yin prior to the altercation at Fisk Alley. Perkins's signed statement corroborated this detail of Holmes's account. However, neither Officer Lampkin nor Foxworth recalled any assertion of self-defense by Perkins or Holmes.
¶ 8. The trial court appointed W.C. Trotter, III, to represent Holmes and W.D. Mounger to represent Perkins. Holmes and Perkins later retained Jim Arnold to jointly represent them. The defense requested a continuance of the November trial date, and the case was tried in March of 1998.

DISCUSSION

I & II

Were Holmes and Perkins denied their rights to due process and to effective assistance of counsel under the U.S. Constitution and the Mississippi Constitution of 1890, (1) when the court permitted, and trial counsel undertook, dual representation of both defendants, or (2)due to trial counsel's alleged failure to (a) properly prepare for the defense; (b) object to the admission of certain evidence and certain statements by the prosecutor; (c) attempt to suppress Perkins's statement to police; and (d) preserve and *534 present defendants' claim of self-defense?

A. Legal Standard
¶ 9. In asserting ineffective assistance of counsel, appellants must overcome the two-part test of Stringer v. State, 454 So.2d 468 (Miss.1984), adopted from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That test requires "(1) that counsel's performance was deficient, and (2) that the defendant was prejudiced by his counsel's mistakes"; thus, an appellant must overcome "a strong presumption that counsel's performance falls within the range of reasonable professional assistance" and show "`a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different.'" Schmitt v. State, 560 So.2d 148, 154 (Miss.1990) (citing Strickland, 466 U.S. at 694, 104 S.Ct. 2052); accord Cole v. State, 666 So.2d 767, 775 (Miss.1995).
¶ 10. Joint representation of co-defendants does not result in a per se violation of the right to counsel. Vielee v. State, 653 So.2d 920, 922 (Miss.1995); Sykes v. State, 624 So.2d 500 (Miss.1993). The reviewing court presumes that "trial counsel's conduct is within the wide range of reasonable conduct and that decisions made by counsel are strategic." Vielee, 653 So.2d at 922; see Edwards v. State, 615 So.2d 590, 596 (Miss.1993); Leatherwood v. State, 473 So.2d 964, 969 (Miss. 1985). As the Vielee court observed, the U.S. Supreme Court addressed possible conflicts saying:
"Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial ..." Cuyler v. Sullivan, 446 U.S. 335, 346-47, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1989[1980]). When defense counsel has breached his duty of loyalty by actively representing conflicting interests and the conflict of interest adversely affects his performance then prejudice is presumed. Cuyler, 446 U.S. at 348-50, 100 S.Ct. at 1718-19. See also Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984).
Vielee, 653 So.2d at 921-22. A criminal defendant who asserts ineffective assistance of counsel must make "some showing of a possible conflict of interest or prejudice" in order to justify reversal of a conviction. Id., at 922 (citing Cuyler, 446 U.S. at 340, 100 S.Ct. 1708).

B. Analysis
¶ 11. No objection was raised asserting ineffective assistance of counsel by either appellant at the trial level. We first address the assertion that the trial court should not have allowed the dual representation. In Cuyler, the court stated, "Absent special circumstances, ... trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." Id. at 346-47, 100 S.Ct. 1708. In the present case, the court initially appointed separate counsel for the two defendants, but Perkins and Holmes chose to jointly retain the attorney who represented them at trial.[3] We find no special circumstances in the record which would have required the trial court to initiate an inquiry regarding the joint representation.
¶ 12. The U.S. Supreme Court has instructed that no distinction should be drawn between retained and appointed counsel in examining questions of ineffective assistance. Cuyler, 446 U.S. at 344-5, 100 S.Ct. 1708. Therefore, we review this issue to determine whether the alleged conflict adversely affected the attorney's performance in representing the two defendants. The appellants assert that *535 certain evidence which may have been admissible against one defendant was not admissible against the other defendant. They contend that the evidence that Holmes and Sims had recently quarreled provided a motive for Holmes but should not have been admitted against Perkins and that a limiting instruction would have harmed Holmes. Similarly, they claim that the admission of Perkins's statement was harmful to Holmes and that a limiting instruction should have been requested. However, the appellants then argue that Holmes benefitted from Perkins's statement because it included an admission by Perkins that he shot into the dwelling house. The appellants contend that evidence about the caliber of the weapons each one carried was beneficial to Perkins because a .38 caliber bullet was recovered from Sims's hip, while Perkins had fired a.22 caliber rifle; conversely, the same evidence was harmful to Holmes, who had a.38 caliber handgun.
¶ 13. The appellants have failed to show that the evidence was not admissible, even if they had not been represented by the same attorney. Separate attorneys would have had the strategy option to offer that evidence beneficial to their respective client. The evidentiary conflicts in the record appear to have resulted mainly from the contradictions between the defendants' statements and their testimony at trial. Finding no error by the trial court in not initiating an inquiry about possible conflicts of joint representation, and finding no adverse effect in defense counsel's performance, we find no merit in Holmes's and Perkins's first issue.
¶ 14. In their second issue, Appellants Holmes and Perkins contend that their defense attorney acted incompetently in their representation. They claim that defense counsel's lack of preparation was evinced by the brevity of his opening statement and direct examination of the defendants. Holmes and Perkins assert that their attorney said, during the re-direct examination of Marvin Sims, that he had not seen Marvin Sims's signed statement. However, we note that defense counsel used an unsigned copy of Sims's statement in cross-examining Sims. The appellants claim that their attorney did not know who would be a witness at trial and that he had not seen his clients' signed statements having asserted that the prosecution failed to provide that information in discovery.
¶ 15. It appears that defense counsel merely claimed that the State did not provide adequate discovery and that this claim could have resulted from a strategic effort to suppress the evidence. Moreover, even if he had never seen the signed statements, defense counsel had an opportunity to read them prior to opening arguments and to refine his strategy accordingly. Thus, we ascertain no indication that the defense attorney was unprepared.
¶ 16. The appellants also allege ineffective assistance for defense counsel's failure to object to certain assertions by the prosecutor during cross-examination and closing argument. They mention their attorney's failure to seek suppression of Perkins's statement on the grounds that it was involuntary. They claim that their attorney failed to raise the appropriate objection to Sims's statement as hearsay. The defense first introduced the statement to impeach Sims's credibility during his cross-examination.
¶ 17. The record reflects that defense counsel raised timely objections throughout the trial. Upon review, we find that defense counsel's performance remained "within the wide range of reasonable conduct" and that Holmes and Perkins have failed to overcome the presumption that defense counsel's decisions are strategic. Vielee, 653 So.2d at 922. The appellants have failed to show that their case was prejudiced by the alleged ineffectiveness of counsel and have failed to establish a reasonable probability that the result would have been different absent the alleged "errors" by defense counsel. See Schmitt v. State, 560 So.2d 148, 154 (Miss.1990) (citing Strickland, 466 U.S. at 684, 104 S.Ct. *536 2052). The discrepancies between the statements to police and the testimony elicited by witnesses at trial presented a question of credibility for the jury to consider in resolving the fact issues. See Johnson v. State, 642 So.2d 924, 928 (Miss. 1994). Even without the evidence that Holmes and Perkins find objectionable, the jurors heard substantial evidence upon which to base the guilty verdicts. Therefore, the alleged ineffectiveness of counsel would not have necessarily changed the results of the trial.[4] Consequently we resolve this second issue adversely to Holmes and Perkins.

III

Were Holmes and Perkins denied their rights to be apprised of the charges against them when defendants were tried and convicted of aggravated assault under an indictment which completely omitted any allegation of venue for that offense?
¶ 18. Holmes and Perkins assert that the indictment was insufficient to apprise them of the charges against them because the venue of the offense was not included in Count I.[5] Count I charged:
THE GRAND JURORS of the State of Mississippi, taken from the body of the good and lawful men and women of Humphreys County, Mississippi being duly selected, empaneled, sworn and charged in the Circuit Court of Humphreys County, Mississippi, upon their oaths, present that: RICHARD HOLMES, JR. and MICHAEL EARL PERKINS, purposely and knowingly cause [sic] bodily injury to Marvin Sims with a deadly weapon, to-wit: a handgun, by shooting him, in violation of Section 97-3-7(2)(b) of the Mississippi Code of 1972, as amended, against the peace and dignity of the State of Mississippi.
An indictment is sufficient to provide notice to the defendant of the charges against him if it includes the seven items enumerated in Rule 7.06, URCCC.[6]Holloman v. Mississippi, 656 So.2d 1134, 1139 (Miss.1995) (citing Roberson v. State, 595 So.2d 1310, 1318 (Miss.1992)); see Gatlin v. State, 724 So.2d 359 (¶ 31) (Miss.1998); Peterson v. State, 671 So.2d 647, 662 (Miss. 1996) (holding that the indictment is sufficient if it includes the seven requirements of Rule 7.06, URCCC, and provides the required notice). Rule 7.06 dictates that the indictment must provide "a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation against him." The seven requirements of Rule 7.06 are:
(1) The name of the accused;
(2) The date on which the indictment was filed in each court;
(3) A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
(4) The county and judicial district in which the indictment is brought;
(5) The date and if applicable the time, on which the offense was alleged to [have been] committed. Failure to state the correct date shall not render the indictment insufficient;
(6) The signature of the foreman of the grand jury issuing it; and
(7) The words "against the peace and dignity of the state".
*537 Holloman v. Mississippi, 656 So.2d 1134, 1139 (Miss.1995) (citing URCCC, 7.06).
¶ 19. In the instant case, both counts of the indictment included the seven required elements and provided adequate notice of the offenses charged. Venue was established at trial without objection from the defense. Miss.Code Ann. § 99-7-5 (Rev. 1994) provides that "[a]n indictment for any offense shall not be insufficient for ... the want of a proper or perfect venue." See Bolen v. State, 309 So.2d 524, 526 (Miss.1975). We find this third issue lacks merit.

IV

Did the trial court commit reversible error by failing to tender adequate self-defense instructions to the jury?
¶ 20. Mississippi's well-established standard for jury instructions allows the trial judge to instruct the jury upon principles of law pertinent to the case either at the request of a party, Miss.Code Ann. § 99-17-35 (Rev.1994), or on the court's own motion, Newell v. State, 308 So.2d 71, 78 (Miss.1975). See also URCCC 3.07. The failure of a court to give a requested instruction does not provide grounds for reversal if the jury was "fairly, fully and accurately instructed on the law governing the case." Smith v. State, 572 So.2d 847, 849 (Miss.1990). The standard requires reviewing jury instructions by reading all instructions together, rather than reading each instruction in isolation. Townsend v. State, 681 So.2d 497, 509 (Miss.1996).
¶ 21. In the present case, the court gave Instructions No. 2 and No. 4, which stated, with respect to each defendant:
[DEFENDANT] has been charged in Count I with the offense of Aggravated Assault.
If you find from the evidence in this Cause beyond a reasonable doubt that:
1. [DEFENDANT], on or about July 14, 1997, in Humphreys County, Mississippi;
2. unlawfully, willfully, feloniously, purposely and knowingly caused bodily injury to Marvin Sims,
3. by shooting him with a handgun, and
4. the handgun was a deadly weapon,
5. and he was not acting in his necessary self-defense
then you shall find the Defendant, [RICHARD HOLMES, JR., or MICHAEL EARL PERKINS], guilty of Aggravated Assault as charged in Count I of the Indictment.
If the prosecution has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find [DEFENDANT] not guilty of Aggravated Assault as charged in Count I of the Indictment.
Through this instruction the jury was allowed to find Holmes and/or Perkins not guilty if the jurors determined that either defendant acted in self-defense. Further instructions about self-defense would have been unnecessary and repetitive. "[W]here one jury instruction adequately covers the defendant's theory of self-defense, there is no error in refusal of a second or redundant instruction." Higgins v. State, 725 So.2d 220 (¶ 19) (Miss. 1998); Cook v. State, 467 So.2d 203, 210 (Miss.1985); Evans v. State, 457 So.2d 957, 959 (Miss.1984); see also Murphy v. State, 566 So.2d 1201, 1206 (Miss.1990) (holding that the trial court may refuse an instruction which is without foundation in the evidence, incorrectly states the law, or is provided in another instruction); Calhoun v. State, 526 So.2d 531, 533 (Miss.1988) (holding that a trial court is not obligated to instruct a jury over and over on the same concept of law despite variations in different instructions).
¶ 22. The appellants claim that the State's closing argument that a person cannot claim self-defense because he is not endangered by someone who is running away from him might have misled the jury *538 as it was tantamount to a jury instruction.[7] Attorneys are permitted great latitude in formulating a closing argument. Dunaway v. State, 551 So.2d 162, 163 (Miss. 1989). The supreme court has provided:
The right of argument contemplates liberal freedom of speech and range of discussion confined only to bounds of logic and reason; and if counsel's argument is within the limits of proper debate it is immaterial whether it is sound or unsound, or whether he employs wit, invective and illustration therein. Moreover, figurative speech is legitimate if there is evidence on which it may be founded. Exaggerated statements and hasty observations are often made in the heat of debate, which, although not legitimate, are generally disregarded by the court, because in its opinion they are harmless.
Taylor v. State, 672 So.2d 1246, 1269 (Miss.1996) (quoting Monk v. State, 532 So.2d 592, 601 (Miss.1988)). Upon review of the State's arguments, we find that the prosecutor did not improperly instruct the jury and merely countered the defendants' contention that they were acting in self-defense when Sims was shot. This responsive reasoning does not overstep the bounds placed upon closing arguments as it was founded upon evidence in the record.
¶ 23. The circuit court appropriately instructed the jury regarding self-defense, and the prosecution's closing argument did not require further instruction from the court. Believing that the jury was adequately instructed, we decide this issue adversely to Holmes and Perkins.

V

Did the trial court commit reversible error by permitting Officer Thurmond to testify that the slug which was removed from Mr. Sims was a .38 caliber and by permitting proof of damage to the blue Chevrolet?
¶ 24. Holmes and Perkins assert that the circuit court erred in allowing Officer Thurmond to testify about the slug caliber without being qualified as an expert witness.
¶ 25. The trial judge is allowed broad discretion in determining the admissibility of evidence and will be reversed only if that discretion was abused and the abuse was prejudicial to the accused. Coleman v. State, 697 So.2d 777, 784 (Miss. 1997) (citing Dye v. State, 498 So.2d 343, 344 (Miss.1986)); see also Underwood v. State, 708 So.2d 18 (¶ 41) (Miss.1998); Parker v. State, 606 So.2d 1132, 1136 (Miss.1992). In order to require reversal, the effect of improperly admitted evidence must be perceived as denying the accused a fundamentally fair trial. King v. State, 615 So.2d 1202, 1206 (Miss.1993).
¶ 26. We observe that Thurmond simply reported the facts gleaned from his investigation of the shooting. While the testimony that Sims was shot with a .38 might have contradicted any evidence that Holmes did not shoot Sims, the trial court remained within its discretion in admitting Thurmond's testimony that the slug was.38 caliber. Officer Thurmond did not testify that the slug was fired from a specific gun. He did not offer opinion evidence that required special forensics training or ballistics testing, and his testimony was based upon his personal knowledge. Therefore, we affirm the circuit court's ruling in this regard.
¶ 27. Holmes and Perkins also contend that the circuit judge erred in allowing evidence of the damage to Sims's blue Chevrolet. While evidence of another crime is not generally admissible against a defendant, the supreme court has established the following exception to the general rule:
[W]here another crime or act is so interrelated to the charged crime so as to constitute a single transaction or occurrence *539 or a closely related series of transactions or occurrences, proof of the other crime or act is admissible. Duplantis v. State, 644 So.2d 1235 (Miss.1994). Evidence of another offense is admissible if that offense is so clearly interrelated to the charged crime as to form single transaction or closely related series of transactions. Mackbee v. State, 575 So.2d 16 (Miss.1990). It must be integrally related to time, place, and fact to that for which defendant stands trial. McFee v. State, 511 So.2d 130 (Miss. 1987). In other words, the evidence is essential for telling the total, rational, and coherent story. Hurns v. State, 616 So.2d 313 (Miss.1993).
Townsend v. State, 681 So.2d 497, 506 (Miss.1996). Again, we find that the trial court did not abuse its discretion by admitting evidence of the damaged car as it offered the jury a more complete story of the ongoing quarrel between Sims and the defendants. The circuit court's admission of the evidence that Sims's car was damaged, if error at all, constitutes only harmless error as it does not stretch to such magnitude that it would require reversal. See In Re Estate of Mask, 703 So.2d 852 (¶ 35) (Miss.1997) (holding that error is reversible only if it is "of such magnitude as to leave no doubt that the appellant was unduly prejudiced" and it adversely affects a substantial right of a party). Thus, we affirm the lower court's rulings on the appellant's fifth issue.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF HUMPHREYS COUNTY OF CONVICTION OF BOTH APPELLANTS ON COUNT I OF AGGRAVATED ASSAULT AND SENTENCE OF TEN (10) YEARS; AND COUNT II OF SHOOTING INTO A DWELLING AND SENTENCE OF FIVE (5) YEARS, WITH SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HUMPHREYS COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] Richard Holmes's brother Timothy was driving the Suburban. Johnny Henderson and Johnny "Baldy" Holmes were also passengers.
[2] Sims's mother, Callie Mae Sims, resided at 203 First Street in Belzoni, Mississippi. His sister, Bobbie Banks, resided in a house directly behind Callie Sims's home.
[3] Holmes and Perkins also elected to jointly retain one attorney to represent both of them on appeal.
[4] Although Holmes and Perkins argue that their trial counsel should have argued mitigating factors prior to sentencing, they fail to inform this Court what mitigating factors existed that might have been argued.
[5] The address of the dwelling house into which the appellants were accused of shooting was included in Count II of the indictment.
[6] The court referred to Rule 2.05 of the Uniform Criminal Rules Of Circuit Court Practice which now exists as Rule 7.06, Uniform Rules Of Circuit And County Court Practice.
[7] The defense raised no objection to the argument at trial.