# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 2000-KA-01214-COA

| | |
|---|---|
| EDDIE BRYANT A/K/A E-DOG | APPELLANT |
| v. | |
| STATE OF MISSISSIPPI | APPELLEE |

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 06/16/2000 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STEPHEN NICK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY JR. |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | COUNT I - AGGRAVATED ASSAULT - 10 YEARS |
| | COUNT II - SHOOTING INTO A DWELLING HOUSE - 10 YEARS |
| | COUNT III - MURDER - 20 YEARS |
| | ALL TIME TO RUN CONSECUTIVELY AND TO BE SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 05/14/2002 |
| MOTION FOR REHEARING FILED: | 6/13/2002; denied 8/20/2002 |
| CERTIORARI FILED: | 9/16/2002 |
| MANDATE ISSUED: | |

BEFORE SOUTHWICK, P.J., THOMAS, AND IRVING, JJ.

THOMAS, J., FOR THE COURT:

¶1. Eddie Bryant was found guilty in the Circuit Court of Washington County of Count I, aggravated assault, Count II, shooting into a dwelling house, and Count III, murder. Bryant was sentenced to serve a ten-year term for both Counts I and II and a twenty-year term for Count III. All three terms are to run consecutively. Aggrieved, he asserts the following issues:

**I. THE TRIAL COURT ERRED IN ADMITTING THE FIVE SHELL CASINGS FOUND AT THE SCENE INTO EVIDENCE.**

**II. THE TRIAL ERRED IN PERMITTING A WITNESS TO TESTIFY THAT A WEAPON HE LOCATED WAS A .45 CALIBER WEAPON.**

**III. THE TRIAL COURT ERRED IN REFUSING TO GRANT A PEREMPTORY INSTRUCTION OF NOT GUILTY.**

**IV. THE TRIAL COURT ERRED IN REFUSING TO GRANT A DIRECTED VERDICT OR JUDGMENT NOTWITHSTANDING THE VERDICT.**

**V. THE TRIAL COURT ERRED IN DENYING THE APPELLANT A NEW TRIAL.**

Finding no error, we affirm.

## FACTS

¶2. Eddie Bryant and Gregory Brown did not get along, to say the least. In August 1998, their disagreement came to blows over a girl who was apparently pregnant by one of them. In December 1998, Bryant went by Brown's mother's house playing a song he had recorded. Brown was on house arrest due to an earlier burglary of an automobile and lived in the house with his mother, sister, sister's boyfriend, niece, and several other children. Brown heard the music outside and thought that the lyrics were in reference to him. Brown grabbed a .38 revolver, ran outside and fired at Bryant missing him. Bryant ran off. Brown then went to his girlfriend's house down the street.

¶3. After leaving his girlfriend's house, Brown stopped by a dice game and spoke to Kendrick Williams. Williams testified at trial that Brown was armed with what appeared to be a .38 caliber revolver. Brown left the dice game and went out to the street. As Brown was walking north down the street, a car passed which belonged to Eddie Bryant's brother. Brown shined a flashlight into the car to see if Eddie Bryant was in the car. Brown testified that he did not see Eddie Bryant in the car and continued walking toward his mother's house.

¶4. Eddie Bryant's brother, Christopher, testified that he was driving the car that passed Brown on the street and that Eddie was in the passenger's seat. At the corner, Eddie Bryant asked to be let out of the car. Christopher testified that Eddie's hand was in his jacket. The car made the corner and gunfire erupted, according to Christopher. Brown testified that he was entering the driveway of his mother's house when he saw someone approaching from the street. Brown testified that the person said, "I'm going to kill you!" before firing shots in his direction. Brown returned fire and ran toward the door to his mother's house. Brown felt he was outgunned and made his way inside to retrieve more ammunition. Inside, Brown found that his niece had been hit in the head by a bullet. Although he initially went for more ammunition, Brown was worried about being caught since he was not supposed to be in possession of a gun, so he put his gun in its hiding place in a vent and closed it up. Brown walked outside to cool down and spoke with Kendrick Williams again.

¶5. During the police investigation of the incident, Brown told the investigators several conflicting stories including that his gun was a "cap gun." During cross-examination, Brown stated that he lied about the positive identification of Eddie Bryant as the shooter. On redirect, however, he stated that he made that

statement on cross-examination because he was "scared of prison." He stated that he identified Eddie Bryant even though it was dark by the "bounce" he made when he walked. Brown claimed to be very familiar with Eddie Bryant's appearance. Brown's mother and sister testified that Brown's niece had been sitting on a seat near a window in the house when they heard gunfire outside. They soon realized that she had been hit in the head and called for help.

¶6. Eddie Bryant showed up at his grandfather's house just down the street shortly after the gunfire was heard, according to Travis Stewart who was playing dominoes with Bryant's grandfather at the time. Bryant did not say anything at the time and left the house after only a few minutes. A short time later, Bryant called Stewart and asked him to retrieve a gun that he had hidden under some tires and rims on the side of his grandfather's house. Stewart told Bryant at this time that Bryant had shot a little girl, but Bryant replied that he did not think he had. Stewart found the gun outside, and testified that it was a large, chrome colored automatic with black grips. Over the defense's objection, Stewart also testified that the gun was a .45 caliber. Stewart took the gun down the street and gave it to Keith Griffin as instructed by Bryant.

¶7. Police investigators on the scene found a bullet that had bent a pole in the carport of the house. Walking down "several houses" in order to determine where the shot had come from, the investigators found five shell casings which were marked as .45 caliber. These were taken into evidence and admitted at trial. They also found two bullet holes in the house and two bullets inside the home, one of which had damaged the television while the other was embedded in the north wall. Neither of these bullets was sent to the crime lab to determine what caliber they were.

¶8. Dr. Steven Timothy performed the autopsy on Brown's niece, who was two years old at her death. She was killed by a gunshot wound to the back of the head that exited through her cheek. The wound was unusual, in that it demonstrated that the bullet was not traveling at a normal trajectory. According to Dr. Timothy, this was consistent with a bullet that had traveled through another object such as the wall before impacting the child's head. Given the damage and size of the wound, the bullet was consistent with a large caliber bullet.

¶9. Eddie Bryant did not testify, but he did present a case-in-chief. Archie Williams testified for the defense that he had been with Bryant and that Bryant did not have a gun that day. Williams stated that Bryant got out of the car to go to his grandfather's house and that Williams accompanied him there. Williams said he did not see Bryant hide a gun at his grandfather's house. Bryant's grandfather testified that his house was searched and that no gun was found there. At the conclusion of the trial, the jury found Bryant guilty of aggravated assault, shooting into a dwelling house, and murder.

## ANALYSIS

### I. THE TRIAL COURT ERRED IN ADMITTING THE FIVE SHELL CASINGS FOUND AT THE SCENE INTO EVIDENCE.

¶10. Bryant argues that the trial court erred in admitting the five shell casings found at the scene into evidence. Bryant argues that the weapon was never found and that no ballistics tests were performed on either the bullets found in the house or the shells in order to identify their caliber. Under Mississippi Rule of Evidence 403, Bryant claims that the identification of the caliber of the casings was unduly prejudicial because the bullets found in the house were not examined to determine their caliber, although he concedes that the casings were relevant evidence.

¶11. During the trial, Bryant insisted that the State not attempt to establish by testimony that the bullets found in the home were .45 caliber. Although the State complied with this request in regard to the bullets, according to *Holmes v. State*, 754 So. 2d 529 (Miss. App. 1999), it was within the trial court's discretion to allow testimony regarding the caliber of the bullets. In *Holmes*, an officer was allowed to testify regarding the caliber of a slug found at the crime scene, although he made no other assertions as to which gun the bullets were fired from or offered any other opinion which required special knowledge. *Holmes*, 754 So. 2d at 538. The State in this case did not go further than establishing that the bullets were "large."

¶12. In regard to the shell casings found at the scene, the witness testified that they were inscribed with their caliber. Bryant did not object at trial. Without an objection at trial, any claim that the testimony was unduly prejudicial is barred from review here. *Cole v. State*, 525 So. 2d 365, 369 (Miss. 1987). Even if we were able to examine the issue, however, we would find no error. According to *Wilkins v. State*, 264 So. 2d 411, 412 (Miss. 1972), tools, weapons, and other physical evidence used or usable in the commission of a crime are admissible into evidence provided that they are relevant and not too remote. Bryant admits that the shells were relevant. The caliber is stamped on the rim of the shells by the manufacturer. The shell itself revealed the caliber to the witness, and the witness should therefore be able to testify about them. This issue is without merit.

## II. THE TRIAL ERRED IN PERMITTING A WITNESS TO TESTIFY THAT A WEAPON HE LOCATED WAS A .45 CALIBER WEAPON.

¶13. Travis Stewart testified that he retrieved a gun at the request of Bryant and gave it to another person. Bryant argues that the trial court erred in permitting Stewart to testify regarding the caliber of the weapon, again citing M.R.E. 403. Travis Stewart was not certified as an expert. However, he was not asked his opinion. Stewart was asked if he "knew" what caliber the gun was, and he testified as a fact that the gun was a .45 caliber handgun. If Bryant wanted to test the basis for this knowledge, he could have done so on cross-examination. If the witness knew what caliber the gun was, he is allowed to testify to it. *Holmes*, 754 So. 2d at 538.

¶14. The caliber of the gun found by Stewart was relevant to show that Bryant had hidden a large caliber gun shortly after the gunfight, that the gun was the same caliber as the shells found at the scene, and to distinguish it from the weapon fired by Gregory Brown. This evidence, although circumstantial, could be used by the jury to determine if Bryant had fired the shots that had killed the child. The trial court has broad discretion in determining the relevance of evidence, and there is no basis to find an abuse of discretion here. *Baldwin v. State*, 784 So. 2d 148, 160 (Miss. 2001).

## III. THE TRIAL COURT ERRED IN REFUSING TO GRANT A PEREMPTORY INSTRUCTION OF NOT GUILTY.

## IV. THE TRIAL COURT ERRED IN REFUSING TO GRANT A DIRECTED VERDICT OR JUDGMENT NOTWITHSTANDING THE VERDICT.

## V. THE TRIAL COURT ERRED IN DENYING THE APPELLANT A NEW TRIAL.

¶15. Bryant's final three issues will be examined together. Our standard of review for the denial of a peremptory instruction, a directed verdict, and judgment notwithstanding the verdict or new trial are identical. *Coleman v. State,* 697 So. 2d 777, 787 (Miss. 1997). Each challenges the sufficiency of the

evidence as a matter of law, viewing the evidence in the light most favorable to the verdict. *May v. State,* 460 So. 2d 778, 780-81 (Miss. 1984). The standard of review of the legal sufficiency of the evidence is as follows:

> [W]e must, with respect to each element of the offense, consider all of the evidence--not just the evidence which supports the case for the prosecution--in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

*Wetz v. State,* 503 So. 2d 803, 808 (Miss. 1987) (citations omitted).

¶16. In the case at hand, evidence was presented to the jury that Eddie Bryant and Gregory Brown were not on good terms with each other to say the least. On December 1, 1998, Brown saw Bryant and fired at him. That evening, Brown saw a vehicle in which he thought Bryant was riding. Shortly thereafter, a man began firing at Brown and Brown returned fire. Brown recognized the man as Eddie Bryant. During the gunfight, at least two large caliber bullets entered Brown's mother's house, one of which struck and killed a child. There was testimony that after the firing Brown hid his weapon and later had Travis Stewart retrieve it and give it to another friend. Shell casings and bullets were found at the scene.

¶17. Firing upon another with a deadly weapon is clearly an aggravated assault under Mississippi Code Annotated Section 97-3-7(2) (Rev. 2000). Knowingly and willfully shooting into a dwelling house and killing a child is depraved heart murder. *Windham v. State*, 602 So. 2d 798, 802 (Miss. 1992). Bryant asserts not that the evidence was insufficient but that the prosecution witnesses "cannot be believed." "As to matters upon which the evidence was in conflict, the court should assume that the jury resolved the conflict in a manner consistent with the verdict." *Craig v. State*, 777 So. 2d 677, 680 (¶10) (Miss. Ct. App. 2000) .

¶18. There was ample evidence presented to the jury for it to convict Eddie Bryant, if the evidence was believed. As trier of fact, it was the jury's duty to determine what evidence was to be believed and what evidence was to be disregarded. *Mangum v. State*, 762 So. 2d 337, 347 (¶36) (Miss. 2000). We find no reason to reverse the jury's decision in this case and therefore affirm Bryant's conviction.

¶19. **THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF COUNT I AGGRAVATED ASSAULT AND SENTENCE OF TEN YEARS, COUNT II SHOOTING INTO A DWELLING HOUSE AND SENTENCE OF TEN YEARS, AND COUNT III MURDER AND SENTENCE OF TWENTY YEARS, ALL SENTENCES TO RUN CONSECUTIVELY AND TO BE SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.**

> **McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.**