656 So.2d 1134 (1995)
Joey L. HOLLOMAN
v.
STATE of Mississippi.
No. 92-KA-00136-SCT.
Supreme Court of Mississippi.
May 11, 1995.
*1136 Rogers J. Druhet, Meridian, for appellant.
Michael C. Moore, Atty. Gen., Jackson, Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION AND PROCEDURAL HISTORY
Joey L. Holloman ("Holloman") was indicted by the Lauderdale County grand jury, in its July 1991 term, as an habitual offender pursuant to Miss. Code Ann. § 99-19-81 (1994), on one count of manslaughter in violation of Miss. Code Ann. §§ 97-3-47, -25 (1994) and two counts of DUI (driving while intoxicated or under the influence of another substance) maiming in violation of § 63-11-30(1), (4) (Supp. 1994). Following a trial on the merits, Holloman was convicted on the manslaughter count and on one count of DUI maiming, but acquitted on the second count of DUI maiming. Holloman was sentenced as an habitual offender to 20 years on the manslaughter count and 10 years on the DUI maiming count, to run consecutively, without reduction or suspension nor eligibility for parole or probation. Holloman's motion for new trial or, in the alternative, for JNOV was overruled. Holloman thereafter perfected his appeal to this Court. He asks that the following issues be reviewed:
A. Whether the indictment, Miss. Code Ann. § 63-11-30(4), application of this statute by way of jury instruction C-A-8, and conviction pursuant to this statute violated Holloman's rights as guaranteed under the 5th, 6th, and 14th Amendments of the United States Constitution;
B. Whether the trial court's grant of instruction S-6 deprived Holloman of his right to due process as guaranteed under the 5th and 14th Amendments to the United States Constitution; and
C. Whether the guilty verdicts are supported by the facts and the law.
None of the issues presented warrant reversal of this case; therefore, this Court affirms.

II. THE FACTS
The parties stipulated to the following facts:
One, the defendant Joey L. Holloman was legally intoxicated at the time of the collision of his 1977 Ford pick-up truck, which he was driving, and a 1987 Dodge six hundred passenger car driven by David Denham. This collision occurred at approximately 12:50 p.m. on March the 24th, 1991, at the intersection of College Drive and Highway 19 North in Meridian, Lauderdale County, Mississippi. This means that he had a blood alcohol level of point one zero percent (.10%) or greater at the time of the crash.
Two, at 4:51 p.m. on March 24, 1991, the defendant, Joey L. Holloman, after being read the required warnings was tested on a Mississippi Crime Lab certified and approved breath analysis machine commonly called an intoxilyzer at the Meridian Police Department. The machine was properly calibrated and certified by Larry Muse of the Mississippi Highway Patrol, who is an agent of the Mississippi Crime Lab for these purposes, on the 1st day of March, 1991. Officer Dan Mahla, who is certified to administer tests on this machine and possesses a valid permit, gave the warnings and administered the test by the approved procedure of the Mississippi Crime Lab. Officer Mahla has been certified since September 21, 1987 and his permit at the time of this test  at the time this test was given was good from August 1, 1990, to August 1, 1991. The result of this test shows the defendant had a blood alcohol level content of point one eight one percent (.181%).
Three, it is further stipulated that the defendant consumed no alcohol and no other substance between the time of the collision and the time the test was given.
*1137 On March 24, 1991, David Denham was driving his nine year old daughter, Lorien, to her soccer game. When he approached Highway 19 from College Drive, at the posted 35 miles per hour speed, he began to slow down for the red light at the intersection. Before he reached the intersection, the light turned green and he drove into the intersection at about 20 or 25 miles per hour. While driving into the intersection, Denham looked to his left, then right, and back to his left again. On his second look left, he saw a truck approaching at a speed too fast to stop at the red light. Denham tried to avoid a collision by turning to the left, but it was too late. Denham remembered nothing after that point until he regained consciousness a few minutes later, to find a group of people in front of his car. Lorien was having trouble breathing and was bleeding from the right side of her head. Denham was unable to move to help his daughter.
After Lorien was removed from the car with the "jaws of life," she and Denham were taken to Rush Hospital. Denham's pelvis was fractured and he had various bumps, bruises, and minor cuts on his head. Denham remained hospitalized for seven days, then was unable to work for five weeks while recuperating. Denham next moved on to a wheelchair and a walker for several weeks, followed by a walking cane for several additional weeks. At the time of the trial, twenty months after the accident, Denham still suffered some pain and, occasionally, a slight limp. Denham testified that his injury was "probably" not permanent. Dr. William Nichols, the emergency room physician on duty the night of the accident, testified that Denham's injuries were serious and would have been life-threatening without medical treatment. Nichols also said there was a "very good possibility" Denham's injuries would give him trouble in the future.
Despite surgery, Lorien died at the hospital on March 29, 1991, without ever having regained consciousness. The cause of death was "a combination of brain trauma, contusion of the brain, [and] brain swelling" caused by a severe skull fracture.
John Osborn, one of Denham's co-workers, testified that he was driving into Meridian on Highway 19 at the time of the accident and saw Holloman's truck run the red light and hit Denham's car; the truck's brake lights never came on. Osborn saw Holloman get out of his truck, run over to look inside the Denham vehicle, then run toward the nearby Jitney Jungle.
Janice Murphy, a nurse, testified that she saw Denham drive under a green light, then saw Holloman's truck, without slowing down, hit Denham's car. As Murphy tried to help Denham and Lorien, she saw Holloman leave his truck and run behind the Jitney Jungle.
Officer Ricky Roberts apprehended Holloman sometime after 3:00 p.m. on the day of the accident, near the Jitney Jungle. Lieutenant Greg Lewis of the Meridian Police Department, a member of the advance accident investigation team, declined to interview Holloman when he was apprehended because he "was too intoxicated at that point to give a statement to us that would be relevant and binding in a court of law." Lewis declined to interview Houston Neal, who was a passenger in Holloman's truck, for the same reason. Lewis was able to determine that the traffic light at the intersection of College Drive and Highway 19 was functioning properly at the time of the collision. Officer Daniel P. Mahla, an advanced accident investigator, immediately smelled alcohol on Holloman's person and on his breath; with the use of field sobriety tests, Mahla determined Holloman was intoxicated.
Two or three days after the accident, Officer Lewis interviewed Holloman and learned he had been drinking beer the morning of the accident and was drinking a beer at the time of the accident. Holloman could not remember whether he had a red or green light at the intersection where the accident occurred. He was talking to Neal and drinking a beer at the time, but knew he was going to hit Denham's car before he actually did so. Holloman thought, but wasn't sure, that he had tried to hit his brakes but actually stomped the gas pedal instead. Holloman claimed he asked Denham if he was hurt, then walked to the Jitney Jungle to call the police. When he heard the sirens, he panicked, ran, and hid in the brush. Holloman, when asked if he wanted to add to his statement *1138 anything else regarding the accident, admitted that the accident was entirely his fault. Prior to this interview, Lewis advised Holloman of his Miranda[1] rights, which Holloman waived, and consulted with Holloman's attending nurse to determine that Holloman's faculties were unimpaired by medication.
Houston Neal testified that he and Holloman had both been drinking on the morning of the accident, but did not remember anything about the collision because he was too intoxicated. Neal's sister, Florence Johnson, testified that at about 3:00 a.m. on the day of the accident, Holloman drove his truck into a pick-up truck parked in her yard while dropping Neal off at Johnson's house. When Holloman and Neal left her house at about 10:00 that morning, Johnson called the sheriff and asked them to stop Holloman's truck because they "had been out drinking all night" and she "felt like he [Holloman] was in condition he didn't need to be driving."
The jury acquitted Holloman on the DUI maiming of Houston Neal and convicted him on DUI maiming of Denham and DUI manslaughter of Lorien Denham.

III. THE LAW

A. Whether the indictment regarding count II[2], Miss. Code Ann. § 63-11-30(4), application of this statute by way of jury instruction C-A-8, and conviction pursuant to this statute and indictment violated Holloman's rights as guaranteed under the 5th, 6th, and 14th Amendments of the United States Constitution.

1. The Parties' Contentions
Holloman claims Miss. Code Ann. § 63-11-30(4) (Supp. 1994) violates the Eighth Amendment to the United States Constitution because it imposes cruel and unusual punishment for causing mere disfigurement as well as for causing death. Holloman further asserts that the indictment only put him on notice that the State would try to prove serious permanent injury, not disfigurement or mutilation. Consequently, according to Holloman, instruction C-A-8 should not have been given because it included elements of disfigurement and mutilation not asserted in the indictment. Finally, Holloman argues that the proof was insufficient to show either permanent injury, disfigurement, or mutilation.
The State responds that Holloman's Eighth Amendment argument has previously been addressed by this Court, with results unfavorable to Holloman. Holloman's failure to object to instruction C-A-8, according to the State, prevents Holloman from raising on appeal his argument concerning this instruction. Alternatively, the State argues that both the indictment and instruction C-A-8 are within the confines of § 63-11-30(4). The State also notes that the proof of permanent injury was sufficient on which to base a conviction.

2. Additional Relevant Facts and Analysis

a. Eighth Amendment
The State is correct that this Court has previously rejected Holloman's Eighth Amendment argument. In Banks v. State, 525 So.2d 399 (Miss. 1988), Banks appealed the trial court's overruling of his motion to quash the indictment on the ground that the punishment imposed pursuant to Miss. Code Ann. § 63-11-30(4) (Supp. 1987) was cruel and unusual. This Court said "imposition of a sentence by the trial judge does not constitute cruel and inhuman punishment ... if within statutory limits." Banks, 525 So.2d at 403. At the time Banks was decided, the punishment imposed by § 63-11-30(4) was a maximum five year penalty for causing either death or mutilation. At the time of Holloman's conviction, § 63-11-30(4) imposed a maximum 10 year sentence for causing either death or mutilation. The trial judge sentenced Holloman to ten years for his DUI maiming conviction. This sentence constitutes neither cruel nor unusual punishment as it is within the statutory limits.

*1139 b. Indictment and Instruction

If an indictment includes the seven items enumerated in Unif.Crim.R.Cir.Ct. Prac. 2.05, it is sufficient to provide the defendant with notice of the charge against him. Roberson v. State, 595 So.2d 1310, 1318 (Miss. 1992). Rule 2.05 requires that the indictment provide "a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation against him." Additionally, Rule 2.05 commands that an indictment include:
(1) The name of the accused;
(2) The date on which the indictment was filed in each court;
(3) A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
(4) The county and judicial district in which the indictment is brought;
(5) The date and if applicable the time, on which the offense was alleged to be committed. Failure to state the correct date shall not render the indictment insufficient;
(6) The signature of the foreman of the grand jury issuing it; and
(7) The words "against the peace and dignity of the state".
All seven requirements of Rule 2.05 are met by the indictment at issue and it "reasonably provide[d] the accused with actual notice" of the charge against him, to wit: DUI maiming. Roberson, 595 So.2d at 1318. See also Smallwood v. State, 584 So.2d 733, 738 (Miss. 1991) (indictment legally sufficient if it gives accused fair notice of offense with which he is charged).
Section 63-11-30(1) makes it unlawful for one to operate a vehicle while under the influence of intoxicating liquor or any other impairing substance. Section 63-11-30(4), at the time of Holloman's accident and trial, provided that anyone who operates a motor vehicle in violation of 63-11-30(1) and
in a negligent manner causes the death of another or mutilates, disfigures, permanently disables or destroys the tongue, eye, lip, nose or any other limb or member of another shall, upon conviction, be guilty of a felony and shall be committed to the custody of the State Department of Corrections for a period of time not to exceed ten (10) years.
Instruction C-A-8 reads as follows:
The Court instructs the jury that mutilate has been defined as deprive a person of the use of any limb of his body or to cut off or permanently destroy or cripple or to radically alter as to make imperfect. Mutilate has been further defined as it applies to a person to mean to deprive a person of the use of any of those limbs which may be useful to him or her in a fight or to otherwise destroy the use of a limb or organ.
The Court instructs the jury that disfigure has been defined as that which impairs or injures beauty, symmetry or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner. It has further been defined as to mar the figure and to render less perfect or beautiful in appearance, to deface or deform, to do such permanent injury which may detract from the personal appearance.
Although Holloman now argues that C-A-8 should not have been given because it defines disfigure and mutilate, neither of which were specifically asserted in the indictment, he submitted, at trial, an instruction defining these same terms. The transcript reveals that, despite his initial objection, Holloman actually acquiesced to the definitions of mutilate and disfigure as finally submitted in C-A-8.
Given the indictment which provided sufficient notice to Holloman, the evidence supporting instructions defining mutilation and disfigurement, Holloman's submission of instructions defining "disfigure" and "mutilate," and defense counsel's eventual acquiescence to instruction C-A-8, there is no merit to this issue.

c. Sufficiency of the Evidence
Instruction S-5, given with no objection, charged the jury to find Holloman guilty of DUI maiming if it found beyond a reasonable doubt that Holloman had, as a *1140 result of his negligent operation of a motor vehicle while intoxicated, mutilated, disfigured or permanently disabled David Denham. Denham suffered a fractured pelvis. There was testimony that Denham's injuries were serious and would have been life-threatening without medical treatment. At trial, Denham still suffered pain and an occasional limp. This evidence is sufficient to find that Denham was permanently disabled or disfigured, as defined in C-A-8[3], as a result of Holloman's negligence while intoxicated. Therefore, this issue is without merit.

B. Whether the trial court's grant of instruction S-6 deprived Holloman of his right to due process as guaranteed under the 5th and 14th Amendments to the United States Constitution.

1. The Parties' Contentions
While Holloman admits that instructions such as S-6 have been approved by this Court, he urges that this Court now reexamine its position in light of the increasing punishments for "minor" injuries resulting from DUI. Holloman further claims that the jury should have been collaterally estopped from convicting him of either manslaughter or one count of DUI maiming, since it acquitted him of the other DUI maiming count.
The State counters that the trial court properly granted S-6 over Holloman's objection because a showing of simple negligence is sufficient for conviction of DUI maiming or homicide pursuant to § 63-11-30(4).

2. Additional Relevant Facts and Analysis

a. Propriety of Instruction
Instruction S-6 reads:
The Court instructs the Jury that Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like or similar circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like or similar circumstances or in failing to do something that a reasonably careful person would do under like or similar circumstances.
When the instruction was offered, Holloman objected because "criminal negligence should be more than what was given in that instruction... . you should have negligence and then culpable negligence and then something in between which would be criminal negligence, something more than simple negligence." The court overruled that objection and accepted S-6 "because simple negligence is an issue in this case as it relates to the DUI maiming and DUI killing."[4] Holloman now argues that, as a result of the increased penalty imposed by statute, more than simple negligence should be required for conviction of DUI maiming.
Holloman is correct on one point  this Court has said simple negligence is sufficient for a conviction pursuant to Miss. Code Ann. § 63-11-30(4) (Supp. 1994). See Banks, 525 So.2d at 402. The statute requires only negligence, not gross or culpable negligence. Miss. Code Ann. § 63-11-30(4) (Supp. 1994). Had the legislature intended to heighten the standard of negligence required when it increased the penalty for DUI maiming, it could certainly have done so. We therefore decline Holloman's invitation to legislate from the bench.

b. Collateral Estoppel
Holloman argues that since he was acquitted on the DUI maiming count regarding his passenger, Houston Neal, who suffered scratches to his face and a broken ankle which continues to bother him, the jury should have been collaterally estopped from convicting him on the DUI maiming charge regarding David Denham and the DUI manslaughter count. This issue is addressed below, at Issue C(2)(b).

C. Whether the guilty verdicts are supported by the facts and the law.

1. The Parties' Contentions
Holloman contends that since he was acquitted of one count of DUI maiming, the *1141 jury's conviction of him on the other DUI maiming count and on the manslaughter count was "arbitrary and capricious and in violation of the Fifth and Fourteenth Amendment due process clauses of the United States Constitution." Holloman re-asserts his collateral estoppel argument and, almost as an after-thought, adds "the Verdicts of guilty are not supported by the facts on the law." No authority is cited in support of his arguments on this issue.[5]
The State first notes that a procedural bar should prevent this Court from addressing this issue. Nonetheless, the State claims Holloman's collateral estoppel argument has already been rejected by both the United States Supreme Court and this Court and contends that the jury's verdicts are not inconsistent.

2. Additional Relevant Facts and Analysis

a. Arbitrary and Capricious
Holloman makes no real argument in support of this claim and cites no legal authority. As a result, this Court finds Holloman has waived any error presented by this issue. Magee v. State, 542 So.2d 228, 234 (Miss. 1989) (argument abandoned or waived when no support offered on appeal).
It is a strange case upon which, in these days of tens of thousands of law books, no authority can be found, and when none is presented and the proposition is not manifestly well taken, there is the practical presumption that the authorities do not sustain the proposition, else they would have been cited. The courts frequently speak of such unsupported propositions as having been waived because of the failure to properly present them. There are several reasons which make it necessary to give weight to the foregoing considerations, one of which is that no supreme court could ever keep up with its docket if the judges were put to the tasks of briefing those cases of which the parties themselves have thought too little to brief.
Johnson v. State, 154 Miss. 512, 513, 122 So. 529 (1929).
Even without imposing the procedural bar, this issue does not warrant reversal. Regarding inconsistent verdicts, the United States Supreme Court has said this:
[I]nconsistent verdicts  even verdicts that acquit on a predicate offense while convicting on the compound offense  should not be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause.
Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.
....
... there is no reason to vacate the respondent's conviction merely because the verdicts cannot rationally be reconciled. Respondent is given the benefit of her acquittal on the counts on which she was acquitted, and it is neither irrational nor illogical to require her to accept the burden of her conviction on the counts on which the jury convicted.
United States v. Powell, 469 U.S. 57, 65, 69, 105 S.Ct. 471, 476-77, 479, 83 L.Ed.2d 461 (1984) (citations omitted). As noted in Powell, the courts' review of the sufficiency of the evidence is adequate protection from jury error or irrationality. Id. at 67, 105 S.Ct. at 477-78. Sufficiency of the evidence is discussed *1142 below at Issue C(2)(c). This issue  arbitrariness and capriciousness or inconsistency of the jury verdicts  is procedurally barred.

b. Collateral Estoppel
Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), cited by Holloman the first time he raised the collateral estoppel claim, affords him no comfort. While Ashe does address collateral estoppel, it clearly states that a prior adjudication of an issue by the trier of fact is necessary to the doctrine. Ashe, 397 U.S. at 445-47, 90 S.Ct. at 1195-96.
In Johnson v. State, 491 So.2d 834 (Miss. 1986), charges of aggravated assault and attempted kidnapping arose from the same set of facts. This Court rejected Johnson's argument that the trial court should have refused to accept the jury's guilty verdict on aggravated assault since the jury acquitted him on the attempted kidnapping charge. Johnson, 491 So.2d at 835-36. This Court said:
This [Johnson's argument] overlooks, however, the nature of the doctrine of collateral estoppel which contemplates a prior adjudication of an issue by the trier of fact. See Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In this case there was no prior adjudication of any issue because the two indictments were consolidated and simultaneously submitted to the jury for its verdict. In our opinion the doctrine of collateral estoppel is simply not applicable when one jury returns two verdicts in a consolidated trial.
Johnson, 491 So.2d at 835-36. In the case sub judice, as in Johnson, the charges were tried together in a single trial and one jury returned the verdicts on all counts. The doctrine of collateral estoppel is unavailable to Holloman.

c. Sufficiency of the Evidence
Holloman's one sentence[6] regarding this issue is supported by no argument or legal authority. With this issue Holloman assails the legal sufficiency of the evidence. If lacking legally sufficient evidence, Holloman's convictions can not stand; therefore, this Court will address this issue despite Holloman's failure to present any argument.
This Court must review the trial court's finding regarding sufficiency of the evidence at the time the motion for JNOV was overruled. See Wetz v. State, 503 So.2d 803, 807-08 (Miss. 1987). The evidence is viewed in the light most favorable to the State. All credible evidence supporting the conviction is taken as true; the State receives the benefit of all favorable inferences reasonably drawn from the evidence. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). Issues regarding weight and credibility of the evidence are for the jury to resolve. Id. Only where the evidence, as to at least one of the elements of the crime charged, is such that a reasonable and fair minded juror could only find the accused not guilty will this Court reverse. Id.
Regarding the DUI maiming charge on which Holloman was convicted, the State was required to prove that: (1) Holloman was under the influence of intoxicating liquor or he had .10% or more alcohol in his blood while operating a motor vehicle; (2) Holloman was, while intoxicated and operating a motor vehicle, negligent; and (3) Holloman's negligence caused mutilation, disfigurement, or permanent disability of another. Miss. Code Ann. § 63-11-30(1), (4) (Supp. 1994). The stipulation entered into by the parties provides evidence of (1) and (2). Additionally, Holloman's negligence was evidenced by testimony at trial regarding his speed and failure to attempt to stop for the red light. Denham's fractured pelvis and resulting limp are evidence that Holloman's negligence caused disfigurement of another.
Regarding the DUI manslaughter charge on which Holloman was convicted, the State was required to prove (1) Holloman was under the influence of intoxicating liquor or he had .10% or more alcohol in his blood while operating a motor vehicle; (2) Holloman was, while intoxicated and operating a motor vehicle, culpably negligent; and (3) Holloman's culpable negligence caused the *1143 death of another. Miss. Code Ann. §§ 63-11-30(1), (4) (Supp. 1994); 97-3-47 (1994). Again, the parties' stipulation provided sufficient evidence of (1). Additional evidence presented at trial, particularly the speed of Holloman's truck and his failure to try to stop for the red light, are sufficient to support a finding of culpable negligence. See Gibson v. State, 503 So.2d 230, 233 (Miss. 1987) (culpable negligence established by evidence that defendant's car left road on straight and level stretch, struck rear of decedent's vehicle which was wholly off road with taillights on, defendant smelled of alcohol, slurred his speech, and had .19% blood alcohol); Chaffin v. State, 227 So.2d 478, 478-79 (Miss. 1969) (culpable negligence established by evidence that defendant was driving while intoxicated at over 100 miles per hour on wrong side of the road). Finally, Lorien Denham's death was caused by Holloman's culpable negligence.
Viewing the evidence in the light most favorable to the State, no reasonable and fair-minded juror could have found Holloman not guilty. There is sufficient evidence to support the convictions of DUI maiming and DUI manslaughter.

IV. CONCLUSION
The sentence imposed upon Holloman for the DUI maiming constitutes neither cruel nor unusual punishment as it is within statutory limits. The indictment meets all requirements of Unif.Crim.R.Cir.Ct.Prac. 2.05 and adequately notified Holloman of the DUI maiming charge against him, evidenced by the jury instructions submitted by Holloman. Furthermore, the evidence presented at trial was sufficient to support Instruction C-A-8, which defines mutilation and disfigurement.
Instruction S-6, a simple negligence instruction, was proper in this case because negligence, rather than gross or culpable negligence, is all that is required by the statute for a conviction of DUI maiming.
Holloman's argument regarding inconsistent verdicts is procedurally barred because he failed to cite any legal authority in support of this proposition. The doctrine of collateral estoppel is not available to Holloman to prevent his guilty verdicts in light of the DUI maiming acquittal because all charges were tried together and one jury returned the verdicts on all counts. There was no prior adjudication of any issue. Finally, the evidence is legally sufficient to support both convictions. Accordingly, this Court affirms.
COUNT I: CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT II: CONVICTION OF DUI MAIMING AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT REDUCTION OR SUSPENSION NOR ELIGIBILITY FOR PAROLE OR PROBATION PURSUANT TO MISSISSIPPI CODE ANNOTATED § 99-19-81 AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVE TO SENTENCE IN COUNT I.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., not participating.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] DUI maiming for which Holloman was convicted.
[3] C-A-8 includes in its definition of disfigure "that which renders unsightly, misshapen, or imperfect."
[4] "Culpable negligence," for purposes of the manslaughter charge, was defined by Instruction S-1.
[5] When Holloman previously raised his collateral estoppel issue he cited Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and noted parenthetically that he urged an extension of collateral estoppel to bar not only relitigation of an issue, as in Ashe, but to prevent a guilty verdict when a jury's determination of acquittal on another count would be inconsistent.
[6] "Finally, the Verdicts of guilty are not supported by the facts on the law."