752 So.2d 480 (1999)
Charles Ray BOLTON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01151-COA.
Court of Appeals of Mississippi.
December 7, 1999.
Rehearing Denied February 8, 2000.
*482 J.B. Van Slyke, Jr., Thomas Michael Reed, Hattiesburg, Attorneys for Appellant.
Office of the Attorney General by Michael C. Moore, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., LEE, AND PAYNE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Charles Ray Bolton was convicted of two counts of attempted robbery by a Forrest County Circuit Court jury. On appeal, Bolton contends that the weight and sufficiency of the evidence does not sustain the conviction, that the State improperly exercised its peremptory challenges, that the prosecution illegally suppressed evidence, that certain identification testimony should have been excluded, and that a jury instruction on trespass should have been given. In addition, Bolton complains that his sentence constitutes cruel and unusual punishment. We disagree that any merit exists in these allegations and therefore affirm.

FACTS
¶ 2. On August 31, 1997, the Econo Lodge Motel in Hattiesburg, Mississippi reported an attempted robbery to Hattiesburg police. The motel clerk, Billy Farlie, told police that a hooded man had entered the motel on Hardy Street and had ordered the clerk to hand over all of the motel's money. Instead, the not-very-intimidated clerk picked up the telephone and called police. The robber fled through the back of the motel. A few minutes later, a hooded man entered a Subway restaurant, also located on Hardy Street, and demanded money. An employee, David Scott, led the robber to the cash register and then walked away while the robber attempted to open the register. Failing in his efforts, the robber left. The police searched the area and found Charles Ray Bolton behind a row of bushes at the rear of a Burger King restaurant.
*483 ¶ 3. The two business employees described the robber as wearing a dark sweatshirt with a hood and front pocket, dark shorts and tennis shoes. Both said the robber had held his hand in the pocket of the sweatshirt as if he had a gun, and both said the robber had threatened to shoot them. Farlie picked Bolton out of a photographic lineup. While Scott did not identify Bolton from the photo lineup, he, like Farlie, identified the clothing Bolton was wearing as that worn by the robber. Scott said Bolton's body size was like that of the robber. Neither witness noticed that Bolton had "teardrop" tatoos beneath his eyes.
¶ 4. Bolton was indicted for attempted armed robbery, but prior to trial, the State moved to amend the indictments to attempted simple robbery, since no weapon was found. A Forrest County jury found Bolton guilty of both counts of attempted robbery. His appeal was deflected to this Court.

DISCUSSION

I. Batson Challenge
¶ 5. Bolton argues that the State's use of its peremptory challenges in the selection of the jury was unconstitutional, as it was motivated by the purpose and had the effect of excluding persons on account of race. Batson v. Kentucky, 476 U.S. 79, 88, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
¶ 6. Four black members of the venire were struck by the prosecution for the following stated reasons: one had two brothers who were convicted of armed robbery, one of whom also was convicted of murder; another did not respond to voir dire and gave an inaccurate response on her survey card; one juror recently had catered the wedding of the son of Bolton's attorney; and, finally, the fourth was struck in order to permit a later member of the venire to serve whom the prosecution believed would be a better juror. In the last case, the selected juror had a college degree, while the struck juror had only a junior high education.
¶ 7. The court ruled that none of the four strikes was racially motivated. These findings by the trial judge receive considerable deference and will be upheld unless clearly erroneous. Davis v. State, 660 So.2d 1228, 1242 (Miss.1995). Previous case law has upheld challenges that focus on educational background, general demeanor, and family members with criminal backgrounds. Lockett v. State, 517 So.2d 1346, 1349 (Miss.1987).
¶ 8. What Bolton specifically argues is that the trial judge failed to comply with a supreme court precedent "that trial courts make an on-the-record, factual determination, of the merits of the reasons cited by the State" for its use of peremptory challenges. Hatten v. State, 628 So.2d 294, 298 (Miss.1993). Some blacks were accepted by the State, and initially it appears that the trial judge held that no prima facie case of discrimination was proven. Even so, the judge then proceeded to have the State indicate its reasons. At that time, the trial judge laboriously had an explanation be given by the State, then invited the defense to make any response. After that was done on each challenged juror, the court then for each challenge stated that it was his opinion that it was not a racially motivated challenge and did not violate the Batson criteria. We find this adequate under Hatten.
¶ 9. The procedure and the substance of the trial court's decision on the challenges is affirmed.

II. Weight and sufficiency of the evidence, including identification testimony
¶ 10. Bolton argues that the identification evidence introduced at trial was insufficient or at least was against the great weight of evidence and could not support a verdict of guilty.
¶ 11. Bolton finds special credibility problems since neither eyewitness had *484 mentioned the distinctive "tear-drop" tatoos on his face. He also contends that since both witnesses testified that the robber was wearing a sweatshirt hood over his head, that they could not have seen the robber sufficiently to identify Bolton as the robber. Finally, Bolton cites his trial testimony that his purpose for being behind the Burger King when he was arrested was that his aunt lived behind the restaurant, and he was waiting for an employee friend to give him some free food.
¶ 12. However, the clerk at Econo Lodge testified that he was able to see the robber's face. That witness had selected Bolton out of a photo lineup containing four other black males. Both witnesses accurately described the clothing that Bolton was wearing when he was arrested. There were other details such as general physique that were consistent with Bolton's appearance. Farlie made a positive identification of Bolton in the courtroom. The detective who conducted the photo lineup testified that the "tear-drop" tatoos were not visible on the photo used in the lineup.
¶ 13. In determining the reliability and validity of eyewitness testimony, the following factors are relevant: the witness's opportunity to view the accused at the time of the crime, the degree of attention exhibited by the witness, the accuracy of the witness's prior description of the criminal, the level of certainty exhibited by the witness at the confrontation, and the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Bolton makes no allegation that the pretrial photo lineup from which Farlie selected Bolton's photo was improperly suggestive.
¶ 14. We find nothing in the evidence to raise any serious question about the identification. It is true that one of the victims stated that he had not seen the robber's face well enough to identify anyone, but the remainder of what that witness did see was consistent with Bolton. That testimony was probative and could be relied upon along with the other evidence to convict Bolton of each burglary. It was the jury's province to assess the reliability of the witnesses. Within a broad range of discretion the decision will be upheld. We do so here.

III. Suppression of Evidence
¶ 15. Bolton argues that his case was irreparably prejudiced because the prosecution withheld evidence that one of the two witnesses, Billy Farlie, had received several harassing telephone calls concerning his testimony. Whether Farlie surprised the defense by his testimony is unclear. The witness testified on cross-examination about getting the telephone calls and stated that the caller identified himself as Bolton's brother. Bolton moved for a mistrial.
¶ 16. The prosecuting attorney told the court that he previously had informed Bolton's attorney about the calls and asked him to talk to his client to try to get them stopped. Bolton's attorney denied having been told about the calls. The trial judge overruled Bolton's motion for a mistrial, but gave the jury a cautionary instruction to disregard this testimony.
¶ 17. Bolton argues that the testimony was so prejudicial to his case that the trial judge should have sustained the defendant's motion for a mistrial. He states that the verdict is of "questionable validity" because of the "atmosphere of intimidation" created by the testimony in the minds of the jurors.
¶ 18. A mistrial should be declared when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case. It is the trial judge who is in the best position to determine the prejudicial effect of an objectionable comment. Gossett v. State, 660 So.2d 1285, 1290 (Miss.1995). Accordingly, the trial judge is vested with discretion to determine whether the comment is so prejudicial that a mistrial *485 should be declared. Edmond v. State, 312 So.2d 702, 706 (Miss.1975). On appeal we are simply determining whether that discretion was abused.
¶ 19. A decision not to grant a motion for mistrial, which is the only decision on such a motion that can be reviewed, is supported by the presumption that when a judge gives a cautionary instruction, the jurors follow it. Walker v. State, 671 So.2d 581, 621 (Miss.1995).
¶ 20. The facts of what occurred with the phone calls and the notification of the defense counsel regarding them can not be fairly assumed on this record. What can be assumed is that the jurors heard the witness's statement, heard the judge rule the evidence to be inadmissible, and heard the instruction to disregard that statement in these words.
Now, at this point in time I am going to verbally give you what is known as a precautionary instruction, and I'm going to instruct you, and then I'm going to ask you under your oaths if you will abide by the instruction of the Court. At this time, by way of a precautionary instruction, I'm going to verbally instruct you that you are to totally and wholly disregard all testimony that was previously elicited from the prior witness as the same went to any "threatening phone calls." Will all of you tell me under your oaths that you will abide by that decision of the Court?
(Jurors respond affirmatively.)
They're indicating that they are. And I instruct you at this time to wholly and totally disregard that portion of his testimony.
¶ 21. Every error in a trial does not require reversal. We find no reason to conclude that the trial judge abused his discretion in deciding that this error was adequately corrected.

IV. Court's Refusal to Give Trespass Instruction
¶ 22. Bolton's defense was that he had nothing to do with the two attempted robberies and was on the Burger King property waiting for a friend who was an employee there. The defense moved at trial to reduce the attempted robbery charges to trespass less than larceny, arguing that the lesser-included offense was appropriate because no weapon was found and no money was taken. The court overruled Bolton's motion, pointing out that a weapon or the actual taking of money are not necessary elements of attempted robbery. Later, when Bolton's attorney offered a jury instruction, D-7, dealing with the lesser-included offense of trespass, the court said, "I've already ruled on that, so that one will be refused."
¶ 23. The denied instruction read as follows:
The Court instructs the jury that if you believe by a preponderance of the evidence that the Defendant did wilfully and maliciously trespass upon the real property of Econo Lodge or Subway, or both, then it is your sworn duty to find the Defendant guilty of the lesser offense of trespass less than larceny.
¶ 24. We find no evidence to support this instruction. Whether Bolton was trespassing when found on the Burger King property has no relevance to whether he was trespassing and not attempting a robbery at the other businesses. The jury found that he was the man who entered while hooded, with his hand in his pocket as if hiding a gun, and demanding money. Whoever that person was, there was no ambiguity concerning his intentions. Absent a factual basis for an instruction, there is no error in refusing to grant it. Murphy v. State, 566 So.2d 1201, 1206 (Miss.1990).
¶ 25. The trial court properly denied an instruction on trespass.

V. Court's Refusal to Grant New Trial or JNOV
¶ 26. Bolton next argues that the trial court erred in denying him a new *486 trial or, in the alternative, a judgment notwithstanding the verdict because of weaknesses or total absence of evidence. In determining whether a jury verdict is against the overwhelming weight of the evidence, an appellate court must accept as true the evidence which supports the verdict, reversing only when convinced the circuit court has abused its discretion in failing to grant a new trial. Collier v. State, 711 So.2d 458, 461 (Miss.1998). Only in cases where the verdict is so contrary to the overwhelming weight of the evidence will the Court disturb it on appeal and grant a new trial. Id.
¶ 27. The entirely separate issue of whether the evidence is insufficient is to be analyzed under a different standard. We accept all the evidence and reasonable inferences in the light most favorable to the State, and based on that view determine whether evidence on any element of the charge is lacking. Only if a reasonable juror had to reach a verdict of not guilty will we reverse. Holloman v. State, 656 So.2d 1134, 1142 (Miss.1995).
¶ 28. The evidence upon which the jury relied to reach its verdict consisted of the eyewitness identification of Bolton by one witness and the corroborating description of Bolton's clothing, size and manner by another, as well as circumstantial evidence relating to time and place. Taking this as true together with all reasonable inferences, it was both sufficient to support the jury's verdict and not against the great weight of contrary evidence.

VI. Appropriateness of Sentence
¶ 29. Bolton received two consecutive fifteen-year sentences for his two convictions of attempted robbery. He argues that this sentence was excessive and disproportionate and constitutes cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution.
¶ 30. Although overruled to the extent that it found a guarantee of proportionality in the Eighth Amendment, Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), defined three factors for courts to consider in determining if a sentence is proportional to the crime. The factors are: (1) gravity of the offense and harshness of the penalty; (2) sentences imposed on other criminals in the same jurisdiction; and (3) sentences imposed for the commission of the same crime in different jurisdictions. The factors were to be applied when "a threshold comparison of the crime committed to the sentence imposed leads to an inference of `gross disproportionality'." Id.
¶ 31. In Mississippi, the supreme court recently found such a case of "gross disproportionality" in Davis v. State, 724 So.2d 342 (Miss.1998). Melissa Davis, a young mother, was sentenced to sixty years without parole for selling two rocks of crack cocaine within 1,500 feet of a church. Id. Although the sentence was within the limits of the sentencing statutes, little was present in the record to explain the severity of the sentence. The court wrote, "one cannot but be concerned about the severity of the sentence in this case in the absence of anything appearing in the record which reflects egregious circumstances." Id. at 344(¶ 10). The case was remanded for resentencing. Id. at 345 (¶ 15). Still, the Davis court recognized "what remains very broad discretion in sentencing matters" and warned that this decision should not be read as imposing new restrictions on that discretion. Id.
¶ 32. In an earlier case, the appellant was sentenced to two consecutive fifteen-year sentences for shooting two people in a rival street gang. Hoops v. State, 681 So.2d 521, 537 (Miss.1996). Hoops said that he had been offered a plea bargain of ten years on each count, to run concurrently, but when he refused to plead guilty, the judge gave him the heavier, consecutive sentences in retribution. Id. at 538. On appeal, the court denied that Hoops's sentence was grossly disproportionate and declined to apply a Solem analysis, applying instead the rule that, within *487 the limits of the sentencing statutes, the trial judge has broad discretion as to the sentence given a particular offender. Id.
¶ 33. Bolton argues that two consecutive fifteen-year terms constitute cruel and unusual punishment prohibited by the Eighth Amendment and by Solem. He alleges that the sentences were set not because of the severity of the crimes, but that they were retribution for his oral and physical outbursts at sentencing. What we know of the incident from the record is that the sentencing hearing began with Bolton's being told to approach the podium. On his way he threatened "Pittman" with death, who likely was assistant prosecutor Edwin Pittman, Jr., who was in the courtroom. That is an interesting recorded event considering the allegation that a member of Bolton's family had threatened others before trial. Regardless, Bolton kicked down the podium and physically struggled with law enforcement officers. Ultimately five officers were needed to restrain him.
¶ 34. Immediately after Bolton was restrained, the sentence was pronounced. As soon as the judge's statement announcing sentence ended, Bolton said, "I will be back in your face when I come back for my appeal. You take that to the bank."
¶ 35. There was no comment by the judge at sentencing that indicated that his view on punishment had changed in the few moments since Bolton began his tirade. Later at a hearing on a motion for new trial, the judge stated this:
I will tell you now, Mr. Bolton, quite frankly it was my opinion because of your actions previously in this court, both verbally and physical actions, it was my intention to show cause here as to why you should not be found in direct contempt of this court for your actions the other day, but in light [of your] receiving the maximum sentence in both of these counts I will not go forward with that if you would make an apology to this Court.
THE DEFENDANT: I apologize.
THE COURT: So noted.
¶ 36. That indicates that the court upon reflection had decided that nothing beyond an apology would be needed to conclude the contempt issue. It is also a statement that is consistent with the view that the trial judge had determined to give the maximum sentence for robbery, but when the outburst occurred his sole reaction to it was that a contempt proceeding would be needed. There is not much to consider in these words that would suggest that the sentence for robbery was made longer because of Bolton's antics.
¶ 37. Bolton was sentenced under the general attempt statute, which makes the sentence for a failed effort at a crime the same as for a successful one. Miss.Code Ann. § 97-1-7 (Rev.1994). There is no premium for incompetence. The maximum sentence for robbery is fifteen years, which is what Bolton received. Miss.Code Ann. § 97-3-75 (Rev.1994).
¶ 38. It is for the legislature to set sentences and for the trial judges to exercise their discretion to impose within the permissible range. Stromas v. State, 618 So.2d 116, 123 (Miss.1993). That applies here. We do not find the severity of the sentence to raise the problems discussed in Davis, if only because this is a thirty-year sentence for two robberies when Davis was a sixty-year sentence for a sale of two rocks of crack cocaine. Davis, 724 So.2d at 345.
¶ 39. It is not the severity that is well raised by these facts, but at most there is an issue of whether an improper consideration infected the trial court's decision. It is important that the trial court can consider a variety of matters beyond the crime itself in setting sentence. U.R.C.C.C. 11.01 & 11.02 (information to be contained in presentence reports). There are other factors that have been declared improper for consideration, such as increasing the sentence because a defendant has insisted upon a jury trial instead of pleading guilty. *488 Gillum v. State, 468 So.2d 856, 863 (Miss. 1985).
¶ 40. We find no precedent requiring a trial judge to await sentencing if the defendant becomes unruly while sentence is about to be pronounced. To review it analytically, we note that this was arguably a direct criminal contempt. Such offenses include acts directed against the dignity of the court, which may involve "words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice." Purvis v. Purvis, 657 So.2d 794, 797 (Miss.1994). That pretty well describes Bolton's outburst. The direct contempt may be handled instantly, as no other evidence is needed, but it is "wise for a judge faced with personal attacks who waits till the end of the proceedings to have another judge take his place." Id. at 798 (citing Mayberry v. Pennsylvania, 400 U.S. 455, 463-64, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971)). That is because a judge who himself becomes the target of abusive action may have lost the appearance of being impartial regardless of whether any actual bias has arisen.
¶ 41. It is instructive that despite the severe offense that a judge might take because of direct criminal contempt, the United States Supreme Court has held that it can be dealt with immediately. Purvis, 657 So.2d at 797. Only if the judge decides to wait should he consider handing the matter to a different judge. Id. The Court made clear, "we do not say that the more vicious the attack on the judge the less qualified he is to act. A judge cannot be driven out of a case." Mayberry, 400 U.S. at 463, 91 S.Ct. 499. We do not think that the judge can be driven away from sentencing either.
¶ 42. We find that since this record contains no indication that the trial judge ratcheted up the sentence because of Bolton's outburst, and since the law makes no requirement that a judge step aside as soon as the decorum of his courtroom has been assaulted, there was no defect in the trial court's pronouncing sentence when he did. It appears to be the sentence Bolton was going to receive regardless of what he had done. Unsurprisingly, his conduct did not cause the sentence to be lowered but neither is there evidence that the sentence was increased.

VII. Cumulative Errors
¶ 43. Bolton argues that even if the errors he has cited in his brief do not individually require reversal, they do so when taken cumulatively, citing Jenkins v. State, 607 So.2d 1171, 1181 (Miss.1992). In Jenkins, the court found an abundance of prosecutorial misconduct in the form of "gratuitous insult and unnecessary inflammatory comment, repeated expressions of outrage, frequently recurring and transparent appeals to the emotions of the jurors, and other such unacceptable conduct which this Court has repeatedly condemned." Id. at 1184.
¶ 44. Nothing of the sort occurred in this trial. Having examined each of the alleged errors and having found them not to be of merit, we affirm.
¶ 45. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF CHARLES RAY BOLTON ON TWO COUNTS OF ATTEMPTED ROBBERY, WITH A SENTENCE ON EACH OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TO RUN CONSECUTIVELY TO EACH OTHER AND TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.