946 So.2d 785 (2006)
Darrell Dominique SMITH, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00591-COA.
Court of Appeals of Mississippi.
June 13, 2006.
Rehearing Denied September 26, 2006.
Certiorari Denied January 4, 2007.
*786 David FitzGerald Linzey, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before MYERS, P.J., IRVING and ROBERTS, JJ.
MYERS, P.J., for the Court.
¶ 1. Darrell Dominique Smith appeals his conviction in the Circuit Court of Lincoln County for aggravated assault and twenty-year sentence in the custody of the Mississippi Department of Corrections. Smith assigns the following three issues as error:
I. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN *787 FAILING TO GRANT THE DEFENDANT'S MOTION FOR A DIRECTED VERDICT AND A NEW TRIAL.
II. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING THE DEFENDANT'S WITNESS TO TESTIFY.
III. WHETHER THE TRIAL JUDGE'S REMARKS ABOUT THE DEFENDANT BEFORE THE TRIAL PREJUDICED THE JURY.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Darrell Dominique Smith was convicted of aggravated assault that stemmed from an incident in which Phyllis Harris was shot through the back and arm. This incident occurred when Harris received word that her son, Bob Henderson, was being threatened by a group of boys. Harris along with her husband, Cederick Harris, daughter, Treneka Henderson, and daughter's boyfriend, Patrick Hudson, set out to look for the group of boys. They were eventually joined by Bob and Dominique Rancifer. The group they were looking for included Dominique Smith, Brandon and Brooks Smith (not related to the defendant), and Roosevelt Collins. The Harris family found the group of boys in Roosevelt Collins' yard where a series of arguments occurred. Eventually two shots were fired and one struck Harris in the back entering her lung and exiting into her arm.

DISCUSSION
I. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO GRANT THE DEFENDANT'S MOTION FOR A DIRECTED VERDICT AND A NEW TRIAL.
¶ 4. Smith as his first issue on appeal asserts that the trial court erred in not granting his motion for a directed verdict or new trial due to the conflicting testimony of the witnesses. We do not agree.
¶ 5. "The standard of review for a denial of a directed verdict, peremptory instruction, and a JNOV are identical." Hawthorne v. State, 835 So.2d 14, 21 (¶ 31) (Miss.2003). A motion for a directed verdict and a request for a peremptory instruction challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). The Court reviews the trial court's finding regarding the sufficiency of the evidence at the time the motion for a directed verdict or peremptory instruction is overruled. Holloman v. State, 656 So.2d 1134, 1142 (Miss.1995). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). However, a motion for a new trial challenges the weight of the evidence. Hawthorne, 835 So.2d at 21. When reviewing a denial of a motion for a new trial, this Court "will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush, 895 So.2d at 844 (¶ 18).
¶ 6. Smith argues that his motion should have been granted due to the lack of credible evidence to support his conviction based on the contradictory testimony given by witnesses to the incident. "It is not our function to determine whose testimony to believe." Taylor v. State, 744 So.2d 306, 312 (¶ 17) (Miss.Ct.App.1999). "We will not disturb a jury's finding on *788 conflicting testimony where there is substantial evidence to support the verdict." Id. We find that substantial evidence was presented to support Smith's conviction.
¶ 7. Phyllis testified that Smith was the person who shot her. This testimony was corroborated by her husband, Cederick. Cederick testified that Phyllis was struck by the second shot that was fired and that Smith was the shooter of the second shot. Cederick testified that he saw Smith shoot Phyllis while Cederick was trying to move away from Smith. Treneka testified to seeing the wound in her mother following the second shot. Dr. David Carner at the Kings Daughter's Hospital emergency room testified to the damage caused by the bullet and that the wound was potentially life threatening. David Whitehead, forensic scientist with the Mississippi Crime Laboratory, testified to the results of the gunshot residue test preformed on Smith and the reason for a negative result after watching a video of Smith removing a sweatshirt. The defense witnesses Brandon and Brooks Smith both testified that Smith fired a pistol in the air and then ran to the street and fired in the direction of Phyllis.
¶ 8. The only contradictory testimony was that supplied by Smith himself. His testimony was that he did not fire the shot that hit Phyllis or that he even had a gun. No testimony was given indicating that anyone else at the scene had a gun. There is conflicting testimony as to those at the scene of the shooting and the location of each person at the time the shots were fired. However, there is no conflict between the State's witnesses and the defense witnesses, other than Smith, that Smith did have a gun and fired two shots.
¶ 9. We find that there is adequate testimony to support the verdict of the jury and that a directed verdict and a new trial were not warranted. This issue is without merit.
II. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING THE DEFENDANT'S WITNESS TO TESTIFY.
¶ 10. As his second issue on appeal, Smith argues that the trial court erred in refusing to allow a witness to testify in his defense. We do not agree.
¶ 11. "[O]ur standard of review regarding the trial court's admission of evidence is well-settled: Under the Supreme Court's standard of review, the admissibility of evidence rests within the discretion of the trial court. . . . Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs." Sanders v. State, 757 So.2d 1022, 1023-24 (¶ 5) (Miss.Ct.App.2000).
¶ 12. At the conclusion of the first day of trial, Smith's counsel notified the prosecution and court that a witness, Dominique Rancifer, who was at the scene of the incident, had voluntarily come forward to testify. Counsel became aware of this witness at approximately noon on the first day of trial and waited until the conclusion of that day's hearing to request that he be added to the witness list. Rancifer was not on either the defense's or prosecution's witness list. Smith contends that Rancifer would rebut prosecution witnesses who testified that they had seen Smith shoot Phyllis. Rancifer was going to testify that he had seen Brandon Smith fire the shot that struck Phyllis. The trial court ruled that Rancifer's name was in the file from the date of the incident until the date of trial and that he was not an unknown witness. The court ruled that the defense had ample time to interview Rancifer and *789 give notice to the prosecution of his testimony.
¶ 13. In De La Beckwith v. State, 707 So.2d 547, 575 (¶ 104) (Miss.1997), the supreme court found that the trial court did not abuse its discretion in excluding the testimony of a defense witness not disclosed to the prosecution until the State had called its primary witnesses. In its holding, the supreme court relied on Taylor v. Illinois, 484 U.S. 400, 416, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), that stated that it is "reasonable to presume that there is something suspect about a defense witness who is not identified until the eleventh hour has passed."
¶ 14. We find that the production of Rancifer at the conclusion of the first day of trial as a defense witness is suspect. The defense had ample time between May 28, 2004, and February 15, 2005, to interview Rancifer and give notice to the prosecution as to the defense's intention to have Rancifer testify. The trial court did not abuse its discretion in excluding Rancifer's testimony. This issue is without merit.
III. WHETHER THE TRIAL JUDGE'S REMARKS ABOUT THE DEFENDANT BEFORE THE TRIAL PREJUDICED THE JURY.
¶ 15. As his third and final issue on appeal, Smith argues that statements made by the court concerning Smith's absence was highly prejudicial. Smith argues that there was an agreement in chambers that the court would not address his absence in front of the jury pool. He argues that the court's explanation of his absence and why the trial was going to proceed prejudged his guilt in the minds of the jurors. We do not agree.
¶ 16. Smith did not show up for trial that was to begin at 9:00 a.m. There was a conference held in chambers by both counsels and the judge. Counsel for the defense was asked under oath to give account of his interaction with his client concerning the day of trial and any knowledge he may have about Smith's whereabouts. Counsel indicated that he had discussed the trial with Smith and that Smith had been present for the omnibus hearing at which time the trial was set. Following the in-chambers hearing the court decided to try Smith in absentia.
¶ 17. Defense counsel objected to the trial in absentia and the objection was overruled. Defense counsel also moved for a continuance based on the fact that the reason for Smith's absence was not known. The court denied the motion, but allowed a continuing objection on that fact. Following this motion, the hearing turned to whether the court should call the bond in front of the jury.
¶ 18. Upon returning to the courtroom, the court addressed the jury pool and informed them of Smith's absence, that the trial would proceed in absentia, and what effect that would have on the defendant. The court then proceeded with voir dire. During voir dire, the court was informed that Smith had been located and his reason for absence was that he thought the trial was to begin at 1:00 p.m. At this time the court went into recess until 1:00 p.m. when Smith would be present.
¶ 19. When voir dire concluded after 1:00 p.m., the court addressed the jury concerning the statements earlier in the day concerning the absence of Smith and instructed the jurors to disregard Smith's absence earlier in the day. The court asked if any jurors would have difficulty putting the absence out of their mind during deliberations. No juror indicated that he or she would have any difficulty and voir dire continued.
*790 ¶ 20. The supreme court has held that it must be presumed that the jurors followed the court's admonition to disregard unanticipated, unprovoked incidents and to decide the case solely on the evidence presented; to presume otherwise would be to render the jury system inoperable. Bell v. State, 631 So.2d 817, 820 (Miss.1994) (see Wright v. State, 540 So.2d 1, 4 (Miss.1989); Hunt v. State, 538 So.2d 422, 426 (Miss. 1989); Johnson v. State, 475 So.2d 1136, 1142 (Miss.1985)). During the giving of jury instructions the jurors were given instruction C-1 that instructed: "You are to disregard all evidence which was excluded by the Court from consideration during the trial." We must presume that the jury did as instructed and therefore this issue is without merit.

CONCLUSION
¶ 21. We find that all three issues presented on appeal are without merit. The judgment of the Circuit Court of Lincoln County is affirmed.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND $10,000 FINE, FULL RESTITUTION TO MEDICAID FOR MEDICAL EXPENSES OF THE VICTIM, AND $2500 ATTORNEY FEES IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.
KING, C.J., LEE, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.